Fred J. Munder, J.
By a long-form indictment in two counts the defendants were accused of the crimes of grand larceny in the first degree and conspiracy.
The larceny count charges that as part of a common scheme and plan the defendants and three named persons and others *699 now unknown between May 1, 1960 and November 1, 1962, stole topsoil belonging to the State of New York of the value of more than $500.
The conspiracy count charges that between those dates the defendants among themselves and with four named persons conspired to commit larceny by stealing topsoil belonging to the State of New York.
In the conspiracy count it is alleged that the topsoil had been stripped from and stock-piled on that portion of the Long Island Expressway extending from the Nassau-Suffolk County line to Pinelawn Road in Suffolk County and transported the topsoil in .trucks of Zara Contracting Co. Inc. and Zara Asphalt Co., Inc. to a golf course in Brookville, New York, and to certain residential premises in Brookville and in Commack, New York.
The defendants now move for an inspection of the Grand Jury minutes and for dismissal of the indictment on such inspection and for a dismissal of the indictment on the ground that unauthorized persons were present in the Grand Jury room during its hearings.
The first of this two-pronged attack is based on affidavits of Graziano C. Zara, one of the individual defendants who is also an officer of both corporate defendants, of the chief engineer of the defendant Zara Contracting Co., Inc., and of the attorney for the defendants. The affidavit of Graziano Zara contains a denial of the charges made against him but no clear and specific factual presentation as is required to overcome the presumption that obtains as to any indictment found by a grand jury that it is based on legal and sufficient evidence. (People v. Glen, 173 N. Y. 395.)
The affidavit of the chief engineer, Joseph M. Gibbons, who appeared and testified before the Grand Jury, contains a disputation as to the nature of the material stock-piled, how much of it was topsoil and how that should have been determined. In Mr. Gibbons’ affidavit is also the concession that the defendants’ records of truck trips showed about 25 trips from the job site to Brookville and he concludes that if the trucks transported “ topsoil ” not more than 250 yards were removed and at $1 per yard the amount involved was $250. This affidavit, rather than factually demonstrating an insufficiency of proof before the Grand Jury, indicates some basis for the indictment. The contentions urged in it are matters of defense which may not now be considered. (People v. McCann, 166 Misc. 269; People v. Banks, 27 Misc 2d 557.)
The attorney’s affidavit and the appended exhibits present simply a buttressed defense argument which may more properly *700 be made on the trial. It is ineffectual on the present application.
Taking all of the supporting papers collectively I find no basis for an inspection of the Grand Jury minutes or for the dismissal, as insufficiently based, of the indictment.
The second phase of this motion is made pursuant to subdivision 2 of section 313 of the Code of Criminal Procedure and seeks “ the dismissal of the indictment on the ground that there were unauthorized persons present in the grand jury during the grand jury hearings resulting in this indictment”. The basis for this application is a recent (Oct. 2, 1964) ruling in the County Court, Westchester County, in the case of People v. Yonkers Contracting Co., holding that subdivision 3 of section 63 of the Executive Law does not authorize the Attorney-General to conduct grand jury proceedings and that the presence and participation of representatives of the Attorney-General before the Grand Jury vitiated the indictments found by it. Subdivision 3 of section 63 of the Executive Law reads:
“ § 63. General duties. The attorney-general shall:
* * *
“ 3. Upon the request of the governor, secretary of state, comptroller, superintendent of public works, superintendent of insurance, superintendent of banks or commissioner of taxation and finance, prosecute every person charged by either of them with the commission of an indictable offense in violation of the law, which such officer is specially required to execute, or in relation to matter connected with his department.”
In our case, similar to that in the People v. Yonkers Contr. Co. case, the indictment was the result of an investigation made by the Attorney-General at the request of the Superintendent of Public Works pursuant to subdivision 3 of section 63 of the Executive Law. The presentation was made by Assistant Attorneys-General to a Grand Jury that had been impaneled and continued as an additional Grand Jury in Suffolk County by several orders of the Appellate Division, Second Department.
In People v. Yonkers Contr. Co. the court very narrowly construed the word “prosecute ” as used in subdivision 3 as limiting the authority of the Attorney-General, when activated by one of the named State officers, to some undefined power short of appearing before a Grand Jury. By contrasting subdivision 2, in which the direction to appear before the Grand Jury is explicitly mentioned and is granted to the exclusion of the District Attorney in respect to the matters specified in the Governor’s requirement, with subdivision 3, in which the words ‘ ‘ grand jury ’ ’ and ‘ ‘ district attorney ’ ’ do not appear, *701 the conclusion was reached that the Attorney-General was, under section 313 of the Code of Criminal Procedure, unauthorized to appear before the Grand Jury in a subdivision 3 prosecution.
In my view this does violence not only to the historic concept of the office of Attorney-General (Matter of Turecamo v. Bennett, 260 App. Div. 253 [2d Dept.]) but to the ordinary meaning of the word “ prosecute ” which connotes the beginning as well as the carrying on of a criminal action. I think it is unwarranted to ascribe a legislative intention to restrict the plain meaning of the word “ prosecute ” especially when, as here, it is used in connection with the words ‘ ‘ indictable offense ’ ’. If “indictable” means “proper or necessary to be prosecuted by process of indictment” (42 C. J. S. 824) it appears to me to be obvious that the Legislature intended that the Attorney-General was to exercise his common-law power and prerogative to oppear before the Grand Jury. This, after all, is the only way in which he can prosecute “by process of indictment”. Furthermore it would be presumptuous of me to hold otherwise in this case when the Grand Jury was especially impaneled by our Appellate Division at the request of the Attorney-General.
I find no necessity to review the many cases dealing with the power of the Attorney-General or to distinguish the more recent cases such as People v. Dorsey (176 Misc. 932) and People v. Hopkins (182 Misc. 313). It suffices to call attention to the excellent exposition on this subject by Mr. Justice Persontus in Matter of Bennett v. Merritt (173 Misc. 355), whose conclusions were reviewed and approved not only by the Appellate Division, Second Department in an unanimous affirmance without opinion (261 App. Div. 824), but also by the Court of Appeals (286 N. Y. 647).
Although they may have become latent since the office of District Attorney was created by chapter 146 of the Laws of 1801, the common-law powers of the Attorney-General have never been abrogated by any constitutional provision or legislative enactment. When activated by the request of a proper State officer to prosecute pursuant to subdivision 3 of section 63 of the Executive Law, these latent powers are revived. If, in such case, there were any doubt about his right to appear before the Grand Jury that should be dispelled by section 10-h of the Code of Criminal Procedure. It reads as follows: “ The provisions of this code, whenever they refer to the district attorney, shall be deemed to refer also to the attorney-general in all matters in which the attorney-general is authorized to act. This section shall apply to all criminal actions and to all other proceedings in criminal cases which are provided for in this *702 code ”. There can be no question that matter pursued upon the request of the State officer is a matter in which the Attorney-General is authorized to act. Moreover, as to such a matter not only is he authorized to act but section 63 of the Executive Law is peremptory mandate on him to act. (People v. Sutcliffe, 255 App. Div. 299.)
It remains then only to determine whether, as was suggested in People v. Tru-Sport Pub. Co. (160 Misc. 628), the request of the State officer must be a written, definitive request. I do not so read the section. While the Attorney-General argues that the request may be oral and that it is solely his concern to determine whether the request is sufficient, I believe that for orderly process and for a proper accommodation between the offices of District Attorney and of Attorney-General the request should be in writing and should generally state the purpose and extent of the inquiry. To hold so, however, would require that I read something into the statute that does not now exist and, in any event, since the request here was in writing, would now be unnecessary and inappropriate. I find that a general request, limited only by the provisions of the statute itself, is sufficient and that it is not necessary to .specify the particular violations of law to be prosecuted. The motion is denied.