Ormand N. Gale, J.
This is a motion to dismiss the indictment for several different grounds. The first ground to be considered by the court is that the Assistant District Attorney who pressed for indictment of the defendant and who presented the matter to the Grand Jury was moved and energized “ by the bias and prejudice of his membership in a so-called hate organization, to wit: The Minutemen ”.
Although the court has previously denied a motion by the defendant to inspect the Grand Jury minutes, the court felt obligated to read them by reason of the seriousness of this charge leveled at the Assistant District Attorney of this county. The court has read these minutes and they are devoid of any remarks, comments or questions not arising out of the evidence presented to the Grand Jury with reference to the crime alleged in the indictment. There was no prejudice whatever demonstrated by the actions or remarks of the District Attorney. The evidence adduced before the Grand Jury, if believed, is sufficient to enable a petit jury to find the defendant guilty of the crime charged beyond a reasonable doubt.
The second charge directed against the indictment is that the Grand Jury was illegally empanelled in violation of the defendant’s rights under the Constitution of the United States and the Constitution of the State of New York, ‘‘in that negroes *428 and Puerto Ricans, citizens of the United States and of the County of Onondaga, who were otherwise qualified to serve on the said Grand Jury, were and still are systematically excluded from service thereon by reason of race and origin, custom and long standing practice, except by the token selection, from time to time, of one Negro and that by such course and pattern of conduct, the defendant was and continues to be deprived of the equal protection of the laws and of due process thereunder.” And finally that the defendant was the victim of “ white baclc-lash”, passion and prejudice.
There is no presumption of irregularity in the selection of the Grand Jury and the defendant has produced no facts to substantiate his contentions. On the contrary, there is a presumption that the Grand Jury was properly empanelled and acted with propriety and that the indictment is valid. (People v. Glen, 173 N. Y. 395; People v. Sexton, 187 N. Y. 495; People v. Sweeney, 213 N. Y. 37.) The affidavit of the Commissioner of Jurors attached to the papers submitted by the District Attorney indicates the panel was chosen from random selection from the election registration rolls of the county. This is one of the methods prescribed and authorized by section 658 of the Judiciary Law. The court has examined the forms submitted to each prospective juror as to his legal qualifications to serve on both petit and grand juries and there is nothing in this form concerning the prospective juror’s race, color or national origin. Since there is no evidence of any deliberate, intentional or systematical exclusion of any particular race, defendant’s position is untenable. (People v. Horton, 18 N Y 2d 355; People v. Agron, 10 N Y 2d 130.)
Since this court presides over the selection of the Grand Jury from those who have been found qualified to serve, the court can take judicial notice that such jurors are chosen by lot as the Commissioner of Jurors indicates in his affidavit. The actual ballots used at the present time in this county are not ballots in the usual sense of the word, but are blank punch cards containing only perforations which are selected at random through the insertion of these cards into an IBM machine. Since there is no direct evidence of exclusion of a particular racial group or evidence of a long-continued pattern of exclusion (People v. Horton, supra) we find no deprivation of defendant’s constitutional rights, either under the United States Constitution or the Constitution of the State of New York. Want of proportional representation of groups, not proven to be deliberate and intentional, is not constitutionally offensive. (People v. Agron, supra.)
*429 However, the New York State Legislature might well consider revision of certain sections of the Judiciary Law. For example, pursuant to section 658, both the village telephone directory or the voters’ registry list, such as is used in this county, are considered legal sources to obtain the names of prospective jurors. It is common knowledge that the percentage of persons entitled to qualify to be a voter and who have registered is not great in light of the entire eligible adult population. Whether a person can afford to have a telephone or whether he or his wife own real or personal property of the value of $250 (Judiciary Law, § 662) is of little significance this day and age in the determination of the guilt or innocence of a defendant charged with a crime. These are very serious matters. (Chestnut v. People, 370 F. 2d 1, 7 [1966].) A defendant is entitled to be judged by a man who is his equal in rank and station. (Black’s Law Dictionary, definition of “ peers ”.) “ ‘ In a free and popular government, it is of the utmost importance to the peace and harmony of society, not only that the administration of justice and the punishment of crimes should in fact be impartial, but that it should be so conducted as to inspire a general confidence, and that it will and must be so. To accomplish this, nothing could be better contrived than a selection of a body, considerably numerous, by lot, from amongst those, who previously and without regard to time, person, or occasion, have been selected from among their fellow-citizens, as persons deemed worthy of this high trust by their moral worth, and general respectability of character. ’ ” (People v. Harris, 182 Misc. 787, 800.)
In his brief, defense counsel states: ‘ ‘ This Court can take judicial notice of the absence of Negroes from Grand Juries and, empirically reviewing the swelling Negro census of the County, can ponder whether non-service upon a Grand Jury by a Negro is accident or design.”
This court has already held that such nonservice is not by any design or purposeful action. However, the court does agree with defendant’s counsel that, if a man is entitled to be judged by his peers, then the present system must be analyzed and studied. The stigma of poverty should not be a barrier to the seating of a juror to judge a peer who is presumed to be innocent. For the reasons indicated the motion is denied.