**UNITED STATES of America,
Petitioner,**

v.

**Hon. Robert L. CARTER, United States
District Judge, Respondent.**

**UNITED STATES of America,**

v.

**Bertram L. PODELL et al., Defendants.
No. 816, Docket 74-1057.**

United States Court of Appeals,
Second Circuit.

Argued Jan. 29, 1974.

Decided Feb. 27, 1974.

Rudolph W. Giuliani, Asst. U. S. Atty. (Paul J. Curran, U. S. Atty., S. D. N. Y., Joseph Jaffe, Michael B. Mukasey, Asst. U. S. Attys., of counsel), for petitioner.

James M. La Rossa, New York City (Gerald L. Shargel, New York City, of counsel), for Bertram L. Podell.

Before WATERMAN and MULLIGAN, Circuit Judges, and BRYAN, District Judge.*

MULLIGAN, Circuit Judge:

On January 14, 1974, Hon. Robert L. Carter, United States District Judge for the Southern District of New York, filed an opinion and order denying the motion of the United States to take the deposition of a prospective Government witness, Ronald C. Kinsey, in Seattle, Washington, pursuant to 18 U.S.C. § 3503.[1] The United States Attorney for

---

* Hon. Frederick vP. Bryan, of the Southern District of New York, sitting by designation.

1. Section 3503(a) provides:
    Whenever due to exceptional circumstances it is in the interest of justice that the testimony of a prospective witness of a party be taken and preserved, the court at any time after the filing of an indictment or information may upon motion of such party and notice to the parties order

the Southern District of New York now petitions us for a writ of mandamus directing Judge Carter to issue an order granting the motion of the United States. Petition granted.

The indictment in this case, containing ten counts, was filed on July 12, 1973 and charges the defendants, Bertram L. Podell, a United States Congressman, Herbert S. Podell and Martin Miller, with conspiracy to defraud the United States (counts 1 and 7), bribery (counts 2, 3 and 4) and conflict of interest (counts 5 and 6), in violation of 18 U.S.C. §§ 371, 201 and 203. The defendants Bertram and Herbert Podell are also charged with making false statements (counts 8 and 9) and Bertram L. Podell is charged with perjury (count 10), in violation of 18 U.S.C. §§ 1001 and 1623.

The defendant Miller, President of the Florida Atlantic Airlines' parent company, is charged with having asked Congressman Podell to use his official position to cause the Civil Aeronautics Board to approve the application of the airline to fly a regularly scheduled route from Florida to the Bahamas. The indictment charges that Congressman Podell agreed to use such influence in return for substantial payments of money in the form of fees and contributions to his own re-election committee. Congressman Podell is alleged to have attempted to influence various federal agencies and Bahamian officials to obtain the route. It is further charged that the defendants were engaged in a conspiracy to commit perjury, to obstruct justice and to make false statements in connection with these services. On July 23, 1973, the defendants pleaded not guilty.

On December 27, 1973, the Assistant United States Attorney in charge of the prosecution of this case, prepared a subpoena for a retired official of the C.A. B., Ronald C. Kinsey, who had appeared before the Grand Jury and who had previously given information to the F.B.I. The Government maintains that Kinsey's testimony is critical to the Government's proof of the charges of conspiracy to defraud, bribery and conflict of interest and this does not appear to be controverted. The trial was set for January 14, 1974, but, at the request of counsel for Bertram Podell on January 2, 1974, trial was adjourned for one week to January 21, 1974. On January 3, 1974, the Assistant United States Attorney learned that Kinsey had suffered a severe heart attack on December 20, 1973, and was hospitalized in Seattle. Kinsey's physician, a certified cardiologist

that the testimony of such witness be taken by deposition and that any designated book, paper, document, record, recording, or other material not privileged be produced at the same time and place. If a witness is committed for failure to give bail to appear to testify at a trial or hearing, the court on written motion of the witness and upon notice to the parties may direct that his deposition be taken. After the deposition has been subscribed the court may discharge the witness. A motion by the Government to obtain an order under this section shall contain certification by the Attorney General or his designee that the legal proceeding is against a person who is believed to have participated in an organized criminal activity.

Section 3503(f) governs the use of the deposition at trial:

At the trial or upon any hearing, a part or all of a deposition, so far as otherwise admissible under the rules of evidence, may be used if it appears: That the witness is dead; or that the witness is out of the United States, unless it appears that the absence of the witness was procured by the party offering the deposition; or that the witness is unable to attend or testify because of sickness or infirmity; or that the witness refuses in the trial or hearing to testify concerning the subject of the deposition or part offered; or that the party offering the deposition has been unable to procure the attendance of the witness by subpoena. Any deposition may also be used by any party for the purpose of contradicting or impeaching the testimony of the deponent as a witness. If only a part of a deposition is offered in evidence by a party, an adverse party may require him to offer all of it which is relevant to the part offered and any party may offer other parts.

and internist practicing at the Seattle Heart Clinic, advised the Government that Kinsey's attack had been almost fatal, and that on the assumption that he suffered no further setbacks, he would not be able to come to New York to testify before the end of March or early April, 1974. The physician indicated that a deposition would not be advisable until the end of January, 1974 at the earliest.

On January 8, 1974, Henry E. Petersen, Assistant Attorney General of the United States, issued the following certification pursuant to 18 U.S.C. § 3503:

> Mr. Paul J. Curran
> United States Attorney
> New York, New York
>
> Dear Mr. Curran:
>
> Pursuant to your request to obtain an order granting the taking of a deposition from Ronald C. Kinsey, I hereby certify, pursuant to the authority conferred upon me by 28 C.F.R. § 0.59(b), that the case of United States v. Bertram Podell, et al, is a legal proceeding against a person who is believed to have participated in an organized criminal activity.
>
> Sincerely,
>
> Henry E. Petersen
> Assistant Attorney General

Thereafter, the Government moved by order to show cause for an order to permit it to take the deposition of Kinsey. In his opinion filed on January 14, 1974, denying the Government's motion, Judge Carter found that the certification was "without basis in fact and is, therefore, made in bad faith." On the other hand, he found that there was adequate demonstration of the unavailability of Kinsey and that his early deposition was the only insurance that the Government had to preserve his testimony. He further held that there was no doubt of the constitutionality of Section 3503 and the right of the Government pursuant thereto to use the deposition of a witness in a criminal trial. Thus, his denial of the Government's motion here was based solely on the alleged inadequacy of the certification of the Assistant Attorney General. Judge Carter construed the term "organized criminal activity," as utilized in the statute, to be equivalent to "gangsterism, racketeering and syndicate activity of clandestine criminal groups." He felt that crimes such as trafficking in dangerous drugs, loan sharking, wholesale theft and violence on a large scale were within the statute. He pointed out that the three defendants in this case are a member of Congress, his brother, who is a member of the New York Bar, and a Florida businessman. He characterized the crimes charged here as typical "public official offenses" not normally associated with so-called organized criminal activity.

This court has recently construed the statute in question in United States v. Singleton, 460 F.2d 1148 (2d Cir. 1972). The holding of that case is clear. "[T]he decision whether or not a proceeding is against a person believed to have participated in organized criminal activity is to be made by the Attorney General or his designee and not by the court." 460 F.2d at 1154. This court specifically held that Congress did not intend that the organized criminal activity certification be subject to judicial examination. The trial court is not to make a *de novo* determination. The certification used here was in the form upheld in *Singleton,* and under *Singleton,* is vulnerable only if the defendant is able to show that the Government acted in bad faith. 460 F.2d at 1154.

The court below found that while the crimes charged in the indictment here were heinous, they were not properly characterized as organized criminal activity. The certification was, for this reason, determined to be without a basis in fact and therefore made in "bad faith." While purporting to follow *Singleton,* the court below was plainly disregarding it. The determination of whether or not the defendants were engaging in organized criminal activity

708

is to be made by the Attorney General or by his designee and not by the court. This is what *Singleton* held. It cannot be circumvented by a finding that the Assistant Attorney General was acting in "bad faith" because the court here disagreed with the Government's determination that the defendants were *believed* to have participated in organized criminal activity. Under *Singleton*, the burden is upon the defendant to establish bad faith on the part of the Government and there is not a scintilla of evidence of bad faith in the record before us and, in fact, no such evidence is suggested in the opinion below. Presumably, the Attorney General had information at his disposal upon which the certification could be made.

■ Even if we were free to question the determination of the Attorney General, we could not accept the proposition that the Congress did not intend to include corruption, obstruction of justice and perjury within the purview of the statute.[2] While crimes of violence engineered by gangs of thugs are of course repulsive and clearly within the concept of organized criminal activity, the concerted corruption charged here is equally odious. The fact that the alleged perpetrators are presumably respectable and

entrusted with responsibility by an electorate or a profession or by stockholders does not suggest, in our view, that they are incapable of engaging in organized criminal activity. We all stand equal before the bar of criminal justice, and the wearing of a white collar, even though it is starched, does not preclude the organized pursuit of unlawful profit. In any event, the determination is for the Attorney General and not for the courts, and that is the holding of *Singleton*.[3]

■ It follows therefore that the court below did not simply abuse its discretion but usurped a power in making a finding which the Congress vested in the Attorney General. Hence, although this court has been reluctant to use the writ of mandamus, and we are aware of no case in which it has been utilized to review, at the behest of the Government in a criminal case, an interlocutory procedural order which does not have the effect of a dismissal, the possibility has not been foreclosed. See Will v. United States, 389 U.S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967); United States v. Griesa, 481 F.2d 276, 278 (2d Cir. 1973) and the concurring and dissenting opinion of Judge Timbers at 279–281. See also Supervisory and Advisory Manda-

2. See Statement of Findings and Purpose, Organized Crime Control Act of 1970, Pub. L.No.91–452, 84 Stat. 922 in U.S.Code, Cong. & Admin.News at p. 1073 (1970); cf. 18 U.S.C. § 1961(1)(A)–(B). Representative Poff, in describing Section 3503 to the members of the House of Representatives, explained that the statute would be applicable "no matter what [the defendant] is being tried for—a violation of the Migratory Bird Act, for instance . . ." provided that he had at sometime participated in organized criminal activity. 116 Cong.Rec. 35293 (Oct. 7, 1970). "Organized criminal activity" is not defined in the statute, however, it is clear that it was not intended that it be given a restrictive interpretation. Congressman Poff described the term as being "broader in scope than the concept of organized crime; it is meant to include any criminal activity collectively undertaken . . . ." 116 Cong.Rec. 35293 (Oct. 7, 1970). Senator Hruska, a co-sponsor of the bill, advised the Senate that the term included all criminal activity that was "not an

isolated offense by an isolated offender . . . ." 116 Cong.Rec. 36294 (Oct. 12, 1970).

3. Congress has in other instances vested exclusive jurisdiction in the executive branch of Government to make determinations relating to law enforcement matters. Under 18 U.S.C. § 3731, for example, the United States Attorney certifies that an interlocutory appeal is not taken for purposes of delay and that evidence suppressed by a trial court is substantial proof of the charge pending against the defendant. The Seventh Circuit has held that this certification need not be accompanied by supporting evidentiary material. United States v. Comiskey, 460 F.2d 1293, 1297–1298 (1972). Similarly where the Attorney General finds under 18 U.S.C. § 6003 that conferring immunity upon a witness is in the public interest, that determination is not judicially reviewable. See Ullmann v. United States, 350 U.S. 422, 432–434, 76 S.Ct. 497, 100 L.Ed. 511 (1956).

mus Under the All Writs Act, 86 Harv. L.Rev. 595, 624–28 (1973).

In view of the circumstances set forth here, we believe the issuance of the extraordinary writ is fully justified. The Government's case, if not terminated, is at least jeopardized if the deposition of the witness Kinsey is not permitted. Counsel for the defendants and the defendants have been invited to attend the deposition. See 18 U.S.C. § 3503(b). The crimes charged here are serious and a cloud of suspicion hangs over the heads of those not usually suspect. The court below commendably urged the parties to seek an early review and resolution of the present dispute by this court in view of the importance and significance of the question. We believe that justice dictates, both for the Government and the defendants, that all the evidence which is relevant be ascertained and presented in this case, and we therefore grant the writ requested by the Government and direct the court below to issue the order permitting the deposition of the witness Kinsey. The trial date we leave to the discretion of the trial court after the taking of the deposition.

---

WATERMAN, Circuit Judge (concurring in the result):

I concur with my colleagues in granting the petition.

I cannot concur in their opinion, however, for I have substantial doubts that Congress intended that a letter sent by return mail from an Assistant Attorney General of the United States to a United States Attorney who requested the letter would be a "certification" pursuant to 18 U.S.C. § 3503. And I have similar doubts that the Congress intended the term "organized criminal activity" to include a broader range of alleged criminal activity than activity generally comprehended within the term "organized crime." In sum, I adopt, in substantial part, the approach of Judge Oakes in his dissent in United States v. Singleton, 460 F.2d 1148, 1155–1159 (2 Cir. 1972).

However, the law of the Circuit has been declared in the majority opinion in United States v. Singleton, and I believe it incumbent upon me to follow that declaration. Nevertheless, I would hope that, if Mr. Kinsey's deposition is taken in Seattle and later introduced at trial, not only the proper interpretation of the statutory language mentioned here, but also the impact upon the constitutionally guaranteed right of an accused "to be confronted with the witnesses against him," will·be preserved for later adjudication. 5 Wigmore on Evidence (3d ed. 1940) §§ 1364–1367; §§ 1420–1422.

"Confrontation: . . . [inter alia], permits the jury that is to decide the defendant's fate to observe the demeanor of the witness in making his statement, thus aiding the jury in assessing his credibility." California v. Green, 399 U.S. 149, 158, 90 S.Ct. 1930, 1935, 26 L.Ed.2d 489 (1970).

We should be zealous to protect the Sixth Amendment right from erosion. See, e. g., Warren, Ch. J., in Greene v. McElroy, 360 U.S. 474, 497, 79 S.Ct. 1400, 3 L.Ed.2d 1377 (1959).