THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* VINCENT J. RALLO, VINCENT A. VERRONE, JOSEPH J. RALLO and FRANKLIN RALLO, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* VINCENT J. RALLO and VINCENT A. VERRONE, Respondents, et al., Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* VINCENT J. RALLO and VINCENT A. VERRONE, Respondents.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* VINCENT A. VERRONE, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* VINCENT J. RALLO, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* VINCENT J. RALLO, Respondent, et al., Defendant.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* SAMUEL VILLONE, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* VINCENT J. RALLO et al., Defendants, and LAWRENCE D. CHESLER, Respondent.

THE PEOPLE OF THE STATE OF NEW YORK, Appellant, *v.* LAWRENCE D. CHESLER, Respondent.

Fourth Department, January 28, 1975.

520

*Maxwell B. Spoont, Acting Deputy Attorney-General* (*John P. Mansour* of counsel), for appellant.

*Charles F. Crimi* for Lawrence D. Chesler, respondent.

*Norman A. Palmiere* (*Herald P. Fahringer* of counsel), for Vincent A. Verrone, respondent.

*Thomas G. Presutti* for Vincent J. Rallo, respondent.

*Anthony F. Leonardo, Jr.,* for Franklin and Joseph Rallo, respondents.

*George W. Conaty, Jr.,* for Samuel Villone, respondent. (No brief or appearance.)

MARSH, P. J. The Deputy Attorney-General in charge of the Organized Crime Task Force (" Deputy Attorney-General ") appeals from eight orders of Supreme Court, Monroe County,

dismissing eight indictments against respondents Vincent Rallo, Franklin Rallo, Joseph Rallo, Vincent Verrone, Samuel Villone, and Lawrence Chesler.

The indictments were returned by a Monroe County Special Grand Jury conducted by the Deputy Attorney-General. The authority for the Attorney-General or his deputy to appear before a grand jury in such cases is set forth in section 70-a of the Executive Law. Pursuant to section 70-a of the Executive Law the Governor of New York and the Monroe County District Attorney gave their approval to the Deputy Attorney-General to appear before the Special Monroe County Grand Jury and conduct these proceedings relating to " any occurrence directly or indirectly involving or affecting either Barbers Realty & Holding Corporation ('Barbers Realty') * * * or Journeymen Barbers International Union, Local No. 246 ('Local 246'), or any officers, employees, agents or persons associated with any of the foregoing * * * and any attendant matters or charges related thereto ". Respondents contend, and Special Term found, that the criminal activities investigated in these proceedings were not within the purview of section 70-a, that there was no authority for the Deputy Attorney-General to appear before the grand jury and that therefore the indictments returned were defective and warranted dismissal, citing CPL 190.25; CPL 210.35 (subd. 5).

While the Legislature's recognition of the need for the enlargement of prosecutorial authority capable of dealing with the diversity of activities of organized crime as related in "Legislative Findings" (L. 1970, ch. 1003, § 1) is based on a general description of organized crime and organized criminal activities sufficiently broad to include the " Appalachian " associates, the " Luciano " mob, the fictional " Godfather " characters and other readily recognizable historical " mob " figures well-known for their drug dealing, hijacking, labor racketeering and other illegal activities, the legislative implementation and statutory scheme found in section 70-a is very specific in its definition of the authority and duties of the " State-wide organized crime task force ". Thus, the specific authority of the Deputy Attorney-General in charge of the organized crime task force, empowered by subdivision 1 of section 70-a to conduct investigations and prosecution of organized crime activities carried on between two or more counties of the State is set forth in subdivision 7 of section 70-a as follows: " With the approval of the governor and with the approval or upon the request of the appropriate district attorney, the deputy attorney general in

charge of the organized crime task force, or one of his assistants, may attend in person any term of the county court, or supreme court having appropriate jurisdiction * * * or appear before the grand jury thereof, for the purpose of managing and conducting in such court or before such jury a criminal action or proceeding concerned with an offense where any conduct constituting or requisite to the completion of or in any other manner related to such offense occurred either in two or more counties of this state, or both within and outside this state. In such case, such deputy attorney general or his assistant so attending shall exercise all the powers and perform all the duties in respect of such actions or proceedings, which the district attorney would otherwise be authorized or required to exercise or perform." Special Term found, after considering the Grand Jury minutes, that "there is nothing before the Grand Jury by way of evidence which I do not say is necessary or by way of preliminary statement, or in any other way, indicating that this prosecution was against or in aid of the local District Attorney's efforts against organized crime", nor did it find any testimony in the minutes that any of these acts occurred outside Monroe County; thus, it concluded, there was no basis for the appearance of the Attorney-General or his deputy before the Special Grand Jury.

These indictments arise out of the misappropriation of hospitalization funds belonging to Local 246, of which Vincent Verrone was the head, to the use of Barbers Realty, of which Vincent Verrone was president and Vincent Rallo was secretary. Barbers Realty was formed to construct a housing project known as the "Landings" apartments in Greece, Monroe County, New York. Both Local 246 and Barbers Realty are local Monroe County organizations. All defendants herein are Monroe County residents. The evidence presented to the Grand Jury, the minutes of which are an exhibit in the record on appeal, show that the principals of Barbers Realty, via a series of fraudulent and larcenous schemes, diverted the funds of Barbers Realty to their own personal use, and that the use of Local 246's hospitalization funds for such project was never authorized. The principal lender after mortgage consolidation was Sackman-Gilliland, a Brooklyn corporation. The construction loan agreement between Barbers Realty and Sackman-Gilliland was negotiated and concluded in Kings County. The broker who arranged the financing for Barbers Realty was a New York City resident. Some transactions in an effort to arrange financing for the construction project took

place in Florida. There was evidence in the Grand Jury minutes to show that fraudulent practices were employed in securing Sackman-Gilliland's continued support for the project.

Indictment 357–A charged Vincent Rallo, Vincent Verrone, Joseph Rallo, and Franklin Rallo, with perjury, making an apparently sworn false statement, offering a false instrument for filing, and conspiracy, all in connection with a false notice of mechanic's lien filed by defendants as Rallo Brothers Trucking, Inc. against Barbers Realty.

.Indictment 373–A charged Vincent Rallo, Vincent Verrone and Lawrence Chesler with grand larceny, violation of article 3–A of the Lien Law, and conspiracy in connection with the diversion of trust funds of Barbers Realty for other than valid trust purposes.

Indictment 356–A charged Vincent Verrone and Vincent Rallo with grand larceny, perjury, conspiracy, improper practices under the Labor Law, and criminal possession of stolen property, relating to funds stolen from Local 246's hospitalization fund bank account.

Indictment 358–A charged Vincent Verrone with falsifying business records, forgery, criminal possession of a forged instrument, and grand larceny, in connection with the issuance of a forged check on Local 246.

Indictment 359–A charged Vincent J. Rallo with forgery, criminal possession of a forged instrument, and offering a false instrument for filing, in connection with uttering a forged satisfaction to comply with subdivision (1) of section 19 of the Lien Law.

Indictment 360–A charged Vincent Rallo and Marcella Rallo with violation of the New York State Tax Law. The charges against Marcella Rallo were dismissed and are not the subject of this appeal.

Indictment 362–A charged Samuel Villone with perjury.

Indictment 361–A charged Lawrence Chesler with criminal facilitation in connection with the diversion of the trust funds of Barbers Realty.

The indictments against Chesler were dismissed by the court below on the ground of insufficient evidence before the Grand Jury to sustain them, and the lower court order also denied the motion to resubmit the evidence to another grand jury. This dismissal of two indictments against Chesler is also the basis of appeals herein.

The indictments against the remaining defendants were dismissed on the ground that the Deputy Attorney-General was

an unauthorized person to appear before the Grand Jury within the meaning of CPL 190.25 and that this so prejudiced the Grand Jury indictments that dismissal pursuant to CPL 210.35 was warranted. This dismissal was without prejudice to represent the evidence to the same or to a new grand jury to be conducted by the District Attorney rather than the Deputy Attorney-General.

Lawrence Chesler, whose office is in Rochester, was the attorney for Barbers Realty. For eight months he kept the funds of Barbers Realty in his law firm's trust account and issued checks thereon at the order of Verrone and Rallo personally. The charges against Chesler result from the diversion of funds from this account via the checks so issued by Chesler.

The Landings project was eventually foreclosed and investigations into the procedures of the principals therein were initiated.

Two questions determinative of the issues herein are presented.

I. Did the Deputy Attorney-General have authority to conduct the Special Monroe County Grand Jury proceeding?

II. Were the indictments against Chesler supported by legally sufficient evidence?

Procedurally, subdivision 7 of section 70–a of the Executive Law sets forth three conditions which must be met in order for the Attorney-General to appear before the grand jury: (1) the Governor must give his approval, (2) the District Attorney must request or approve the appearance of the Attorney-General, and (3) the grand jury proceedings must be related to " an offense where any conduct constituting or requisite to the completion of or in any manner related to such offense occurred either in two or more counties of this state, or both within and outside this state." No issue is raised as to the propriety and sufficiency of compliance with (1) and (2) above. Contrary to the finding of the court below, the Grand Jury testimony also contains evidence that acts in furtherance of or related to the offenses contained in the indictments occurred in New York City and the counties thereof, and even out of this State in Miami, Florida.

It appears from the broad language of subdivision 7, wherein the term " organized crime " is never employed, that the Legislature intended to give wide procedural latitude in this area to bring to fruition the investigations conducted by the Organized Crime Task Force.

The statutory delegation of authority contains no ambiguity or uncertainty of definition of what may or may not constitute organized criminal activity but concerns itself directly with " a criminal action or proceeding concerned with an offense where any conduct constituting or requisite to the completion of or in any other manner related to such offense occurred * * * in two or more counties of this state ", and is conditioned only upon the approval of the Governor and the approval or request of the District Attorney. The very fact that the term organized crime is difficult of precise definition and its many tentacles difficult of establishment by legal proof, together with the possible prejudice to a defendant if the term were used in the course of a prosecution is undoubtedly the reason for the choice of wording of subdivision 7 of section 70-a. The statutory provisions provide no basis for any attempt by judicial authority to make a determination as to whether the criminal activities charged come within its conception of " organized crime activities." The crimes charged here involved defendants alleged to have been engaged in a form of union racketeering related to activities occurring across the State in two or more counties.

In *United States* v. *Carter* (493 F. 2d 704) it was held that the trial court usurped the power vested in the Attorney-General by Congress when it denied the government's motion to take a deposition pursuant to subdivision (a) of section 3503 of title 18 of the United States Code upon proper certification. The trial court attempted to define " organized crime " and determined that the charges alleged in the criminal proceeding did not fall within the traditional definition. The appellate court held that there was a *presumption* that the Attorney-General had information upon which to base his certification and that the burden was upon defendant to show the Government's bad faith in certifying the activities as " organized criminal activities." (*United States* v. *Carter, supra* p. 708, and n.2.) The Deputy Attorney-General is not required to offer what might be considered by a court to be satisfactory evidence to support a finding of a relationship between the investigations made and the crimes charged and some particular aspect of organized crime. As a very practical matter the connection establishing the relationship well may be unsusceptible of proof before a court at the stage of the prosecution when the proceedings are challenged and the statute wisely does not require any such showing. No bad faith or abuse has been shown and there is a strong presumption that the Attorney-General, here with the approval of the Governor and the Monroe County

District Attorney, did not abuse the discretion given them by the Legislature in the conduct of their investigations (*People ex rel. Peabody* v. *Attorney General*, 22 Barb. 114, 118; *United States* v. *Singleton*, 460 F. 2d 1148, cert. den. 410 U. S. 984). While the Attorney-General needs statutory authority to appear before the Grand Jury, the authority is not proved by the ultimate decision handed down by the Grand Jury. It is not the allegations framed in the indictment that determine whether the entire proceeding has been bona fide to begin with, or whether it must be nullified. The validity of the proceeding must be determinable at its outset. The authority of the Attorney-General is either valid or void, not voidable as determined by the ultimate crimes "proved" or charged in the indictment (*People* v. *Bradford*, 206 N. Y. S. 2d 343; *People* v. *Bradick*, 16 Misc 2d 1080, 1082; *Spiegel* v. *County Ct. of Kings County*, 129 N. Y. S. 2d 109, 112). Furthermore, once the validity of the proceeding is established, CPL 190.65 (subd. 2) provides: "The offense or offenses for which a grand jury may indict a person in any particular case are not limited to that or those which may have been designated, at the commencement of the grand jury proceeding, to be the subject of inquiry". Thus, once properly empaneled, the grand jury may indict for perjury committed before it (*People* v. *Tomasello*, 21 N Y 2d 143, 151; *People* v. *Selikoff*, 66 Misc 2d 618, 623–624), and should be able to investigate any violation of law incidental to or part of the specifically authorized violations which are the subject of the statutory authority (*Matter of Daniman* v. *Board of Educ. of City of N. Y.*, 306 N. Y. 532, 544; *People* v. *Dorsey*, 176 Misc. 932, 940–941). The grand jury derives its power from the State Constitution and from the Legislature and courts should grant it the widest latitude in the exercise of its powers to investigate and present. Such powers may not be curtailed absent clear legislative intent (*People* v. *Stern*, 3 N Y 2d 658, 661). Thus, any charge, including one of perjury, or any claim against defendants which was incidental to the large-scale fraud and larceny practiced by Verrone and Vincent Rallo that was uncovered by the Grand Jury in its investigations should properly be a permissibly indictable offense herein. To hold otherwise would be in derogation of the statutory authority granted the Attorney-General.

We also find that Special Term abused its discretion in dismissing the indictments against Lawrence Chesler. CPL 190.65 (subd. 1) sets forth the criteria for presenting an indictment: "a grand jury may indict a person for an offense when (a) the

evidence before it is legally sufficient to establish that such person committed such offense and (b) competent and admissible evidence before it provides reasonable cause to believe that such person committed such offense.'' There is a presumption that the grand jury indictment is based upon legal and sufficient evidence (*People* v. *Glen,* 173 N. Y. 395, 403; *People* v. *Potwora,* 44 A D 2d 207, 210; *People* v. *Zara,* 44 Misc 2d 698, 699). The burden is upon the defendant to demonstrate an insufficiency of proof (*People* v. *Zara, supra,* p. 699) and such proof must evidence a '' clear showing '' that the indictment was defective (*People* v. *Dunleavy,* 41 A D 2d 717, affd. 33 N Y 2d 573; *People* v. *Potwora, supra,* p. 210). In this case the evidence before the Grand Jury was sufficient to sustain the indictment, that is, when taken together and uncontradicted, it would be sufficient to convict (*People* v. *Sacks,* 276 N. Y. 321; *People* v. *Ward,* 37 A D 2d 174, 176; Paperno & Goldstein, Criminal Procedure in New York, Part I, § 155). There is no contention that incompetent or inadmissible evidence was used to support these indictments. The purpose and function of the indictment is to determine whether there is sufficient competent evidence to warrant conducting a trial (Paperno & Goldstein, § 145). Any rebuttal evidence of defendant must await such trial (*People* v. *Donahue,* 309 N. Y. 6, 7; *People* v. *Karl,* 41 A D 2d 1001; *People* v. *Ward,* 37 A D 2d 174, 176, *supra*).

The evidence before the Grand Jury in this case shows that Chesler was the attorney for Barbers Realty, that he handled the closing on the construction loan for Barbers Realty with Sackman-Gilliland, and that for several months he maintained the funds of Barbers Realty in his lawyer's fiduciary account, issuing numerous checks on such account. Several of these checks were payable to Verrone and to Rallo, and totaled thousands of dollars. Other checks were issued to parties in circumstances indicating that Chesler had substantial reason to know that the moneys were being paid to satisfy personal obligations of Vincent Verrone.

The funds held and disbursed by Chesler were trust funds within article 3-A of the Lien Law (Lien Law, § 2, subds. 13, 14; § 70). Respondent's arguments that section 79-a of the Lien Law exonerates any trustee from criminal liability for the repayment of advances of personal funds out of the trust fund is unavailing to Chesler, because in fact, the evidence shows that payments to Verrone and Rallo and corporations controlled by them were not repayments. Good faith is not a defense within this section. Any defense Chesler may have should

be proved at trial before a petit jury (*People* v. *Donahue,* 309 N. Y. 6, *supra*; *People* v. *Ward,* 37 A D 2d 174, *supra*; *People* v. *Karl,* 41 A D 2d 1001, *supra*.) It is an " affirmative defense " (the burden of proof being on defendant to establish the defense by a preponderance of the evidence, Penal Law, § 25.00), that advances, which are prima facie considered diversions under subdivision 1 of section 73 of the Lien Law were applied for purposes of the trust, in an action against a *transferee* of the trust assets. (*Caristo Constr. Corp.* v. *Diners Financial Corp.,* 21 N Y 2d 507, 512.) It would appear that no less burden should be placed on one who is the actual *trustee* of the trust assets governed by article 3-A of the Lien Law.

As to Chesler's second argument, there is no showing that the indictment was defective so as to warrant its dismissal pursuant to CPL 210.35 (subd. 5). CPL 190.25 (subd. 6) requires that instructions to the jury made by the court or the District Attorney be recorded. Such provision is mandatory (*People* v. *Percy,* 74 Misc 2d 522, 527; Waxner, Criminal Practice, par. 8.13). Failure to follow the procedures of CPL 190.25 constitutes a defect within the meaning of CPL 210.20 (subd. 1, par. [c]) and is ground for moving to dismiss the indictment (CPL 210.35). However, it must be shown that the failure to conform to section 190.25 was " to such degree that the integrity " of the indictment is thereby " impaired *and* prejudice to the defendant may result ". (CPL 210.35, subd. 5; emphasis added.) Defendant points out in his brief that there is only scant recording of jury minutes. However, although the lack of full compliance with CPL 190.25 (subd. 6) should not be encouraged, the import of the evidence before the grand jury was clear and sufficiently sustains its indictments (*People* v. *Peluso,* 29 N Y 2d 605, 607). Defendant has not shown prejudice to any constitutional right, but rather a mere irregularity in procedure (assuming his conclusions are correct that more instructions were given than are recorded in the grand jury minutes) (*People* v. *Glen,* 173 N. Y. 395, *supra*; *People* v. *White,* 44 A D 2d 749; *People* v. *Au Clair,* 74 Misc 2d 704; *People* v. *Thomas,* 53 Misc 2d 427). Upon a reading of the Grand Jury minutes we find that there was sufficient evidence adduced to warrant the indictments charged. Defendant has not shown prejudice, nor overcome the presumption of regularity that attaches to the indictments returned below, which are prima facie valid (*People* v. *Glen, supra,* p. 403; *People* v. *Potwora,* 44 A D 2d 207, 210, *supra*; *People* v. *Smith,* 128 N. Y. S. 2d 90, 94, affd. 283 App. Div. 775).

The orders should be reversed and all nine indictments reinstated.

DEL VECCHIO, J. (dissenting). I would affirm the dismissal of the indictments on the ground that the Assistant Attorney-General, by whom the evidence was put before the Grand Jury, was an unauthorized person, in violation of CPL 190.25 (subd. 3) and that the proceeding was therefore defective under CPL 210.35 (subd. 5).

In presenting the evidence which gave rise to the challenged indictments the Assistant Attorney-General acted as an arm of the Organized Crime Task Force created by section 70–a of the Executive Law. When, as now, the authority of that officer to appear before the Grand Jury is challenged, there must be some showing of a legal justification for his appearance, which is otherwise prohibited by the CPL (see *Matter of State of New York* v. *Parker,* 30 N Y 2d 964; *Matter of A'Hearn* v. *Committee on Unlawful Practice of Law of N. Y. County Lawyers' Assn.,* 23 N Y 2d 916).

The majority of the court find that justification in subdivision 7 of section 70-a of the Executive Law, and conclude that all that is required is the approval by the Governor, the approval or request by the appropriate District Attorney and some showing of an offense with related conduct occurring in two or more counties of the State.

In my view, there is an additional requirement — i.e., a showing of a relationship between the evidence presented to the Grand Jury and organized crime activities, or of a reasonable basis for suspicion of such a relationship. A reading of the legislative findings and of the executive documents circulated at the time of passage of section 70-a of the Executive Law leaves no doubt that the statute is a legislative effort to reach and combat organized crime activities (L. 1970, ch. 1003, § 1; Memorandum of State Executive Department, 1970 McKinney's Session Laws, pp. 3023–3024; Governor's Message, 1970 McKinney's Session Laws, pp. 3050–3051). These resources are replete with references to " organized crime " and " multi-county organized crime activities ". Subdivision 1 of the statute, which creates the organized crime task force within the department of law, states its " duty and power " as follows: " (a) To conduct investigations and prosecutions of *organized crime activities* carried on either between two or more counties of this state or between this state and another jurisdiction; (b) To cooperate with and assist district attorneys and other local law enforcement officials in their efforts against *organized crime.*" (Empha-

sis added.). Each of these powers and duties is focused on organized crime; the remaining subdivisions of section 70-a provide means and details of implementing those powers and duties. Organized crime is the target of the legislation; the *Organized Crime* Task Force is the vehicle for its effectiveness, and the incidental provisions for that body's operations are instinct with a necessary relevance to its powers and duties. "The dimensions and diversity of the activities" which must be present to authorize intervention by the Task Force are "multi-county organized crime activities involving such offenses as gambling, trafficking in dangerous drugs, hijacking, labor racketeering, loansharking, extortion and bribery". (L. 1970, ch. 1003, § 1, subd. 4.) (See *Matter of Sussman* v. *New York State Organized Crime Task Force,* Sup. Ct., Sullivan County, July 12, 1974, HUGHES, J.)

Indeed, on this appeal the Deputy Attorney-General does not seem to question the need for a relationship to organized crime activities, but interprets the approval by the Governor and by the District Attorney of Monroe County as a determination of that relationship, relying on *United States* v. *Singleton* (460 F. 2d 1148, cert. den. 410 U. S. 984) and *United States* v. *Carter* (493 F. 2d 704). There are two answers to that contention: first, nowhere in the letters of approval — which are substantially identical — is there any such determination by the approving officials, and nothing in the record provides any basis for concluding that a showing had been made to them before the letters were issued upon which they might have made such a determination; second, nothing in the statute indicates that approval by the named officials satisfies the requirement of the existence of organized crime for activity by the organized crime task force. The requirement of approval by the two designated public officers is an *additional,* and subordinate, requirement for intrusion by the Deputy Attorney-General or one of his assistants in the local prosecutorial process; *it is not a substitute for a showing of organized crime.*

In this respect, the statute with which we are dealing is significantly different from that involved in the *Singleton* and *Carter* cases, and that difference serves to make those cases of little value in resolving the present appeal. The legislation with which those cases were concerned (U. S. Code, tit. 18, § 3503, subd. [a]) expressly authorized certain action upon "certification by the Attorney General * * * that the legal proceeding is against a person who is believed to have participated in an organized criminal activity". Thus, the statute clearly made

the *certification of involvement in organized criminal activity* the predicate for subsequent action directed at the further uncovering of organized crime. By specific provision, the qualification under the statute was met by such certification which, when issued, the Federal Court of Appeals held could not be looked behind by judicial review, absent bad faith of the certifying officer. In our case, however, there is no such provision for certification as to organized crime involvement and, absent a legislative mandate that a relationship with organized crime is to be deemed to have been established by the approval of the Governor and the District Attorney for the Deputy Attorney-General's appearance, we would be accomplishing judicial legislation to read such a provision into the statute and "we are not privileged, by judicial construction, to legislate." (*Matter of Metropolitan Life Ins. Co. v. Boland,* 281 N. Y. 357, 361.)

An examination of the Grand Jury minutes reveals that the only contacts outside of Monroe County were with brokers and agents for banks, financial corporations and individuals in relation to efforts of various defendants to secure funds for the construction of the apartment house which was being built. There was no other contact with anyone outside the geographical limits of Monroe County. There is no proof whatsoever that these persons outside of Monroe County had any connection with defendants except as brokers, lenders and prospective lenders of money. Those who did advance funds actually were victims of the defendants in that they did not receive full payment for moneys advanced to defendants. It was never the intention of section 70-a of the Executive Law to prosecute individuals who victimize persons residing in another county with no showing of an unlawful conspiratorial connection. Certainly, if an individual residing in Monroe County were to defraud residents of Monroe County and of several other counties such an individual would not be considered a member of organized crime on this evidence alone.

All that this record reveals is that the Governor and the District Attorney consented to the prosecution of this matter by the task force. Completely absent in this record is any evidence " of organized crime activities carried on either between two or more counties of this state or between this state and another jurisdiction ". The crimes for which the indictments were returned were conceived and carried on in Monroe County by residents of that county. It was the obligation and responsibility of the District Attorney of Monroe County to institute and

carry on this prosecution. It should not be possible, nor does the law permit, a local District Attorney to avoid performing his duty by consenting to let others do it for him.

The record before us — including the evidence put before the Grand Jury — fails to disclose any organized crime activities under consideration by the organized crime task force. Although there is in the transcript of the proceedings before the Grand Jury evidence of activities occurring in two or more counties which related obliquely to offenses being presented, there is nothing to connect those activities with organized crime. As stated above, such activities as were had outside of Monroe County were with persons who were themselves defrauded by these defendants. In such circumstance, the Deputy Attorney-General was obligated, in the face of a challenge to his authority, to come forward in response to the Special Term's invitation and make an *in camera* showing of a sufficient basis to validate his presence before the Grand Jury. His refusal to do so suggests that he had no such evidence.

At this point it is not necessary to determine what proof would be sufficient to establish that the organized crime task force was acting within the authority conferred on it by section 70-a of the Executive Law. In view of the Deputy Attorney-General's refusal to make any showing of a predicate for his prosecutorial activities, that question is not here presented. Suffice it to say, however, that some demonstration of a basis for the exercise of his authority, within the bounds defined by the statute that created the agency for which he acts, is a reasonable requirement properly sought by defendants indicted by the Grand Jury before which he appeared.

Absent a showing of a relationship with organized crime activities in the matters being presented to the Grand Jury, I conclude that the Monroe County District Attorney, who is charged with the duty of prosecuting crimes cognizable by the courts of his county (County Law, § 700), rather than the Assistant Attorney-General, should have presented the matters contained in this transcript to the Grand Jury. Every element of the crimes for which the indictments were returned was committed within Monroe County by residents of that county. I might add that the acts occurring in Miami, Florida, which the majority characterizes as " acts in furtherance of the offenses contained in the indictments ", bore no relationship at all to the several crimes for which indictments were returned, and in fact were not even in aid of the Sackman-Gilliland financing, which itself did not form the basis of an indictment.

Accordingly, the orders dismissing the indictments should be affirmed with a direction that the Monroe County District Attorney submit the matter to a Grand Jury.

As to the appeals from the dismissals of the indictments against defendant Chesler on the ground of insufficiency of proof, I would agree with the majority that there was sufficient evidence to warrant the indictments against this defendant but, because of the infirmity in the proceedings before the Grand Jury, I conclude that the indictments should be dismissed. I would therefore modify these orders to permit and require submission by the District Attorney to another Grand Jury, and as modified, would affirm.

MOULE and MAHONEY, JJ., concur with MARSH, P. J.; GOLDMAN and DEL VECCHIO, JJ., dissent and vote to affirm in an opinion by DELVECCHIO, J., in which GOLDMAN, J., concurs.