Jones, J.
(dissenting). I am persuaded that the activating letters from the Commissioners of Health and Social Services to the Attorney-General lacked the specificity contemplated by subdivision 3 of section 63 of the Executive Law and accordingly that Deputy Attorney-General Hynes did not have authority to issue the Grand Jury subpoenas which are sought to be quashed in this proceeding;
Subdivision 3, one of the subdivisions of that section under which the Attorney-General may be authorized to investigate and to prosecute, provides:
*139 "The attorney-general shall:
* * *
"3. Upon request of the governor, comptroller, secretary of state, commissioner of transportation, superintendent of insurance, superintendent of banks, commissioner of taxation and finance or commissioner of motor vehicles, or the head of any other department, authority, division or agency of the state, investigate the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any matters connected with such department, and to prosecute the person or persons believed to have committed the same and any crime or offense arising out of such investigation or prosecution or both, including but not limited to appearing before and presenting all such matters to a grand jury.” (Emphasis added.)
The disposition of this appeal turns on the proper meaning to be ascribed to the italicized words.
The letters from the commissioners were couched in identical terminology — requests to "investigate the alleged commission of any indictable offense or offenses in violation of the Public Health [Social Services] Law or in relation to any matters connected with the New York State Department of Health [Social Services] by hospitals subject to the provisions of Article 28 of the Public Health Law [Social Services Law], their principals, agents, suppliers or other persons connected or involved therewith.” The only focus of the requested investigation was any indictable offense in violation of the Social Services Law or article 28 of the Public Health Law committed by hospitals or their associates. Few brushes could paint a broader or less specific agenda for investigation of the hospital industry in New York State. I cannot conclude that this is what the Legislature contemplated as required to invoke the authority vested in the Attorney-General under subdivision 3 of section 63; nor have we previously approved any such blunderbuss.
What the statute requires before the Attorney-General, and through his delegation his Special Prosecutor, may presume to act, is a request that the former investigate "the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any. matters connected *140 with such department”. The majority construes these words as requiring no more than a parroting of the statutory verbiage on the duly signed letterhead of one of the listed department heads to set the office of the Attorney-General in motion. Such, a construction is too broad and saps the statute of any meaningful limitation, casting on the Attorney-General at one time both the authority and the responsibility for an unbounded and undefined investigation of criminal activity within a sweeping subject area. Bearing in mind that the duty of investigation and prosecution of indictable offenses rests normally with the several District Attorneys of the State, who are the officers chosen by popular vote to perform that function, the conferral of special authority on the State Attorney-General to perform the same duty is fittingly circumscribed by subdivision 3 of section 63 of the Executive Law. The reference to "the alleged commission of any indictable offense or offenses in violation of the law which the officer making the request is especially required to execute or in relation to any matters connected with such department” contemplates some identifiable criminal activity within the knowledge or suspicion of the department head to which he specifically invites the attention of the Attorney-General. It is by no means inappropriate for the Legislature to have required that the nature of the crimes or criminal activity suspected be describable and be described in the department head’s request which galvanizes the State’s legal officer to act in an area otherwise reserved to local District Attorneys. That specific misconduct is contemplated is underscored by the prosecutorial power which descends on the Attorney-General — power "to prosecute the person or persons believed to have committed the same”. The inclusion of some definitive specification in the request which sets in motion the office of the Attorney-General serves a real purpose, not only in confining the scope of authority of that office but also in making possible a meaningful judicial review of the exercise thereof, which must always be contained within the limits of the authority conferred (Matter of A’Hearn v Committee on Unlawful Practice of Law of N. Y. County Lawyers’ Assn., 23 NY2d 916, cert den 395 US 959).
The attention devoted by both parties to our recent decision in Matter of Friedman v Hi-Li Manor Home for Adults (42 NY2d 408) is not warranted. That case does not address the issue posed by this appeal. The authority of the Deputy Attorney-General there was predicated on an executive order *141 issued by the Governor under subdivision 8 of section 63, not on authority derived from subdivision 3. The two subdivisions have a completely different legislative history and envisage wholly different activating prerequisites. As we noted in Friedman, the predecessor of subdivision 8 was enacted during World War I, when the Legislature recognized that a war emergency might create a need for such authority. Continued thereafter, the provision has been viewed as requiring some demonstration of urgent if not emergent circumstances. The critical consideration under subdivision 8 is the existence of such an activating prerequisite; this necessary predicate was found to have been met in Friedman and the three prior instances cited therein. The source of authority under subdivision 8 is not dependent on the specified scope of the language employed in the enabling executive order. The authority derives from the underlying circumstances and occasion for the issuance of the executive order, and the scope of the delegated authority to investigate and to prosecute will necessarily be principally defined by the dimensions and character of these underlying circumstances.
The existence of authority under subdivision 3 depends on a quite different predicate, calls for no such imperative prerequisite, but does require some particularization of the suspected criminal activity. Present subdivision 3 of section 63 of the Executive Law was enacted by chapter 790 of the Laws of 1965 to replace a prior subdivision derived from section 62 of the Executive Law of 1909 which in turn had been derived from section 52 of the Executive Law of 1892. The statutes in effect from 1892 to the time of the 1965 replacement had authorized the Attorney-General on request of one of several designated State officers to prosecute a person "charged [by the officer] with the commission of an indictable offense in violation of the laws, which such officer is especially required to execute, or in relation to matters connected with his department.” Thus, the Attorney-General’s authority, extending only to prosecution, clearly related both to an identified crime and to an identified suspect.[1]
*142 In 1965 the present subdivision 3 of section 63,[2] adding investigative authority, was enacted as a part of the program of the Attorney-General. The memorandum of the State Department of Law accompanying the legislation states that, in addition to adding the Commissioner of Motor Vehicles to the included public officers, "the provisions of the present section are also expanded by the amendment to clarify the power of the Attorney General because of inconsistent interpretations of the statute by trial courts within the last year”. (1965 McKinney’s Session Laws of NY, p 2086.) While the Attorney-General was thus explicitly clothed with authority to investigate as well as to prosecute criminal activity relative to a State agency or department when requested to do so by the department head, nothing in the 1965 material suggests that there was any intention to convert what had theretofore been a focused attention on identified wrongdoing to a roving examination of all activities relative to a particular State department simply in the expectation of uncovering crimes, if any there be, without any particularization of suspected illegality by the requesting department head.
Until now our court has not had occasion to consider what degree of particularization, if any, is required to activate authority under subdivision 3. In Matter of Sigety v Hynes (38 NY2d 260), while subdivision 3 requests had preceded the Governor’s executive order under subdivision 8, we upheld the issuance of the subpoenas as authorized under subdivision 8. In People v Tomasello (21 NY2d 143) no challenge was raised to the authority of the Attorney-General to conduct the Statewide investigation there involved on the ground that the underlying requests lacked the requisite specificity. In Matter of Goldstein v Hynes (45 NY2d 712) we denied leave to appeal[3] from an order of the Appellate Division (64 AD2d 1032) which had upheld the issuance of subpoenas predicated on the same requests from the Commissioners of Health and Social Services as are involved in the case now before us. The contention advanced in that case was that to trigger the authority of subdivision 3 the implementing requests must specifically *143 enumerate the alleged indictable offenses. To the extent that appellants in the case now before us urge the same contention as a ground for reversal it should similarly be rejected. While identification of the particular offenses charged might have been required when subdivision 3 authority was limited to prosecutions, after the 1965 amendment, which added authority to investigate as well as to prosecute, it would be unrealistically restrictive and defy common sense to require enumeration of specified offenses for investigation. This is not, however, to say that all requirements for focus and direction were thereby discarded.[4]
In principle, undergirded by history, I am persuaded that the thrust of subdivision 3 of section 63 is more properly to be analogized to that of subdivision 2,[5] the historical superseder subdivision, than to the differently oriented purpose of subdivision 8. If there is to be a wide-ranging investigation of an entire industry or any broad segment of it, the authority should come under subdivision 8, if the extraordinary circumstances prerequisite to reliance on that subdivision exist, or preferably, as we indicated in Friedman, from a specific individualized grant from the Legislature. Subdivision 3 exists to enable the designated heads of State departments to enlist the aid and assistance of the Attorney-General in the investigation and prosecution of identified criminal activities, known or suspected by the department head to be occurring.
Because there has not been that degree of particularization *144 in this instance, I would reverse the order of the Appellate Division and grant the application to quash the subpoenas.
Chief Judge Cooke and Judges Gabrielli and Meyer concur with Judge Jasen; Judge Jones dissents and votes to reverse in a separate opinion in which Judges Wachtler and Fuchs-berg concur.
Order affirmed, with costs.

. Unlike instances in which reliance is placed on subdivision 8, there was no requirement that there be some demonstration of special occasion for resort to prosecution under subdivision 3. While it might be inferred that recourse to this provision would not necessarily be the normal course of events, nothing in the statute or its legislative history suggests that the decision when to call on the Attorney-General rested other than in the nonreviewable discretion of the particular State officer.

. The group of public officers entitled to call on the Attorney-General under subdivision 3 has been expanded by amendments enacted by chapter 420 of the Laws of 1968 and by chapter 814 of the Laws of 1969.

. As to the significance of a denial of leave to appeal, see, e.g., Panico v Young (46 NY2d 847).

. In the lower courts, there has been relatively little attention given to subdivision 3. The first attempt to invoke its provisions, when the scope of the subdivision was still limited to prosecution only, was rejected in People v Tru-Sport Pub. Co. (160 Misc 628), inter alia, on the ground that the activating request of the Secretary of State was "insufficiently complete and definite as to the subject-matter of the requested prosecution and, as well, to its compass in time, place and manner” (at p 633). In People v Yonkers Contr. Co. (24 AD2d 641, mod 17 NY2d 322) the underlying request from the Superintendent of Public Works concerned alleged irregularities on the part of a named corporation and named individuals with respect to a described contract. In People v Zara (44 Misc 2d 698) the court upheld the authority of the Attorney-General based on a request by the Superintendent of Public Works for prosecution of persons who might have violated the law by removing topsoil belonging to the State.
As is noted in the majority opinion (p 136) broad, general requests of the Commissioners of Health and Social Services have been held sufficient at the Appellate Division to support investigation and prosecution of indictable offenses in the nursing home industry (Matter of Agnello v Armer, 56 AD2d 712; Matter of L & S Hosp. & Institutional Supplies v Lefkowitz, 54 AD2d 734; Matter of L & S Hosp. & Institutional Supplies Co. v Hynes, 51 AD2d 515).

. For a similar view see People v Tru-Sport Pub. Co. (160 Misc 628, 633, supra).