**UNITED STATES of America, Plaintiff-Appellant,**

v.

**Charles A. COMISKEY, Defendant-Appellee.**

**No. 71–1490.**

United States Court of Appeals, Seventh Circuit.

Argued Jan. 21, 1972.

Decided May 4, 1972.

**1294**

James R. Thompson, U. S. Atty., Michael P. Siavelis, Asst. U. S. Atty., William J. Bauer, U. S. Atty., Chicago, Ill., for plaintiff-appellant; John Peter Lulinski, Asst. U. S. Atty., of counsel.

George J. Cotsirilos, S. Jack Michelotti, Chicago, Ill., for defendant-appellee.

Before HASTINGS, Senior Circuit Judge, and KILEY and STEVENS, Circuit Judges.

HASTINGS, Senior Circuit Judge.

The primary question before us is whether the defendant was sufficiently advised of his constitutional rights as required by Miranda v. Arizona, 384 U. S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), so as to permit the admission into evidence of his statements made to an agent of the Federal Bureau of Investigation in an interview conducted in defendant's office on February 16, 1970.

Defendant Charles A. Comiskey was indicted on December 17, 1970, by a federal grand jury on two counts of perjury, alleging violation of Title 18 U.S.C.A. § 1621. He was charged with committing perjury concerning his testimony in the trial of a civil case entitled, First Wisconsin National Bank of Milwaukee, plaintiff, versus Charles Comiskey, Joseph R. Vaughn and William Rach, defendants, No. 67–C–1438, United States District Court for the Northern District of Illinois, Honorable William J. Lynch, Judge, presiding.

The civil proceeding concerned a loan transaction wherein a promissory note in the amount of $35,000 had been executed and delivered to the plaintiff bank by a corporate borrower. The note bore the personal endorsement of the three defendants, including Comiskey, on the back thereof. At the civil trial, on January 12, 1970, Comiskey testified under oath in substance that he never signed such promissory note and that his name appearing on the back of the note was not his signature. After defendant Comiskey persisted in denying that he signed his name on the back of the note, Judge Lynch warned him that he was under oath and subject to the penalties of perjury. Judge Lynch then stated that he would direct the matter to the attention of the District Attorney for further investigation.

On February 2, 1971, the defendant in the instant perjury action moved to dismiss the indictment, alleging, *inter alia,* that his statements given to an FBI agent, as well as specimens of his handwriting, were obtained in violation of his constitutional rights. Treating the motion to dismiss as a motion to suppress evidence, the trial court denied the motion to dismiss the indictment. However, the trial court held a suppression hearing on April 2, 1971, for the purpose of determining whether the investi-

gating FBI agent properly advised defendant of his constitutional rights. Following the hearing, the trial court denied defendant's motion to suppress the handwriting specimens but granted defendant's motion to suppress his statements given to the investigating agent.

At the suppression hearing defendant Comiskey did not testify and called as his only witness FBI Agent Robert T. Murphy, Jr. Agent Murphy testified that he telephoned defendant on February 14, 1970 (about a month after the trial), and advised defendant he wanted to interview him concerning his testimony at the civil trial involving the promissory note he was alleged to have signed.

Two days later, on February 16, 1970, Agent Murphy called on defendant at defendant's office in Oak Brook, Illinois. At that time Agent Murphy identified himself to defendant and advised him again that the purpose of his proposed interview was "about his testimony in the civil trial concerning a promissory note which he was alleged to have signed." Murphy further advised defendant that before interviewing him he would have to warn him of certain constitutional rights. The agent furnished defendant with an "Interrogation; Advice of Rights" form and explained to him the rights stated on the form. The defendant then read the form and stated that he understood it; said he was willing to be interviewed concerning the matter; and signed the form. The signed copy of the form was identified by Agent Murphy as Government Exhibit A and was offered and received in evidence by the trial court. A copy of such executed form is set out in the margin herein.[1]

Agent Murphy then asked defendant to explain the whole story regarding his alleged signing of the promissory note and other information regarding it. Defendant then made statements in which he denied signing the promissory note (the incriminating statements set out in the indictment) and supplied specimens of his handwriting.

In suppressing his statements given by defendant to the investigating agent, the district court based its ruling on a finding that the agent did not sufficiently comply with Miranda v. Arizona, 384 U.S. 436, 86 S.Ct. 1602, 16 L.Ed.2d 694 (1966), in two respects, viz.: (1) that the agent failed to warn defendant that he was the subject of a criminal investigation; and (2) that the FBI Interrogation; Advice of Rights form was inadequate to so warn the defendant. The Government's motion for reconsideration was denied. The Government appealed pursuant to Title 18 U.S.C.A. § 3731, certifying that the suppressed evidence constituted a substantial proof of the charge alleged against defendant. We reverse.

1.
GOVERNMENT EXHIBIT "A"
INTERROGATION; ADVICE OF RIGHTS
YOUR RIGHTS
Place—Oakbrook, Illinois
Date—2/16/70
Time—12:02 p.m.
Before we ask you any questions, you must understand your rights.

You have the right to remain silent.

Anything you say can be used against you in court.

You have the right to talk to a lawyer for advice before we ask you any questions and to have him with you during questioning.

If you cannot afford a lawyer, one will be appointed for you before any questioning if you wish.

If you decide to answer questions now without a lawyer present, you will still have the right to stop answering at any time. You also have the right to stop answering at any time until you talk to a lawyer.

WAIVER OF RIGHTS
I have read this statement of my rights and I understand what my rights are, I am willing to make a statement and answer questions. I do not want a lawyer at this time. I understand and know what I am doing. No promises or threats have been made to me and no pressure or coercion of any kind has been used against me.

/s/ Charles A. Comiskey
Witness: Robert T. Murphy, SA, FBI
Witness:
Time: 12:07 p. m.

## I.

The Fifth Amendment of the Federal Constitution guarantees the right that no person "shall be compelled in any criminal case to be a witness against himself." The extended treatment and consideration of this Fifth Amendment privilege is, of course, the subject of *Miranda*. The dispute concerning the application of *Miranda* to the case at bar is the burden of this appeal. The progeny of *Miranda* seems to be never ending. Without comment, we quote the Court's own summarization of its majority holdings.

> "To summarize, we hold that when an individual is taken into custody or otherwise deprived of his freedom by the authorities in any significant way and is subjected to questioning, the privilege against self-incrimination is jeopardized. Procedural safeguards must be employed to protect the privilege and unless other fully effective means are adopted to notify the person of his right of silence and to assure that the exercise of the right will be scrupulously honored, the following measures are required. He must be warned prior to any questioning that he has the right to remain silent, that anything he says can be used against him in a court of law, that he has the right of the presence of an attorney, and that if he cannot afford an attorney one will be appointed for him prior to any questioning if he so desires. Opportunity to exercise these rights must be afforded to him throughout the interrogation. After such warnings have been given, and such opportunity afforded him, the individual may knowingly and intelligently waive these rights and agree to answer questions or make a statement. But unless and until such warnings and waiver are demonstrated by the prosecution at trial, no evidence obtained as a result of interrogation can be used against him." *Id.* at 478–79, 86 S.Ct. at 1630.

Initially the Government contends that *Miranda* is not applicable here because "the defendant was interviewed in his own office and was not in custody at the time of the interview, nor was his freedom of movement restricted in any manner." Further, defendant was not under arrest. In addition to *Miranda*, the Government also cites and relies upon United States v. Gallagher, 7 Cir., 430 F.2d 1222, 1224 (1970); United States v. Cook, 7 Cir., 432 F.2d 1093, 1106 (1970), cert. denied, 401 U.S. 996, 91 S. Ct. 1224, 28 L.Ed.2d 535 (1971); United States v. Carzoli, 7 Cir., 447 F.2d 774, 779 (1971), cert. denied, 404 U.S. 1015, 92 S.Ct. 673, 30 L.Ed.2d 662 (1972).

Relying upon our decisions in United States v. Dickerson, 7 Cir., 413 F.2d 1111 (1969); United States v. Habig, 7 Cir., 413 F.2d 1108 (1969); and on United States v. Turzynski, N.D.Ill., 268 F.Supp. 847 (1967), defendant contends *Miranda* is applicable even though he was not in custody, provided he was under an investigation that had shifted to one criminal in nature.

However, we need not reach and decide this applicability question here because of our resolution of this appeal on a different basis.

## II.

Defendant's claim that he was entitled to *Miranda* warnings even though not in custody at the time of the interview, affords him no relief in the case at bar. Assuming *arguendo* that *Miranda* is applicable, our considered judgment is that it is clear beyond dispute that defendant was given full and complete warnings by the FBI investigating agent in accord with the constitutional requirements of *Miranda*.

At the time of the interview, Comiskey was a responsible businessman, not under arrest nor in custody. He had not been charged with a crime. The interview was conducted in his office two days after a prior request by the interviewing agent who had stated the purpose of the request. Upon arrival for the interview, the agent identified himself and again stated the purpose of the

interview, *i. e.,* to interview Comiskey about his testimony in the civil trial concerning the promissory note which he was alleged to have signed. This interview took place on February 16, 1970. This followed, by slightly more than one month, the date when Comiskey had given the subject testimony on January 12, 1970, and had received the admonition from Judge Lynch warning him of the penalties of perjury and ordering the matter referred to the attention of the District Attorney for further investigation.

With this background Agent Murphy informed Comiskey he would have to advise him of his constitutional rights and did so. He presented the Interrogation; Advice of Rights form to Comiskey who read it, stated that he understood it and was willing to be interviewed concerning the matter and signed the form. The interview followed.

Under these circumstances, we conclude that the warnings contained in the FBI Interrogation; Advice of Rights forms fully complied with the requirements of *Miranda.* These procedures and warnings employed by the FBI were cited with approval by the Supreme Court in *Miranda* at 483–484, 86 S.Ct. 1602, 16 L.Ed.2d 694. They have been approved by our court in United States v. Johnson, 7 Cir., 426 F.2d 1112, 1115 (1970), and United States v. Cook, 7 Cir., 432 F.2d 1093, 1106 (1970), cert. denied, 401 U.S. 996, 91 S.Ct. 1224, 28 L.Ed.2d 535 (1971).

Defendant Comiskey cannot now be heard to claim that he "could well have misapprehended the purpose of the FBI agent's interrogation." It is wholly unreasonable and specious to conclude that Comiskey was not aware at that time he was suspected of violating federal criminal statutes. There was no evidence to that effect at the suppression hearing.

In light of the foregoing, we hold that defendant Comiskey's Fifth Amendment privilege against self-incrimination was adequately safeguarded by a full compliance with the procedures delineated in *Miranda.*

### III.

Defendant contends that the Government's appeal pursuant to Title 18, U.S.C.A. § 3731 is not well founded because its certification for the appeal fails to allege specific evidentiary facts which constitute substantial proof of the charge alleged against defendant. We find this contention to be without merit.

Section 3731, as amended June 19, 1968, by Public Law 90–351, Title VIII, 82 Stat. 237, effective at the time the instant criminal case began in the district court on December 17, 1970,[2] provides in relevant part:

> "An appeal may be taken by and on behalf of the United States from the district courts to a court of appeals in all criminal cases, in the following instances:
>
> " *   *   *
>
> "From an order, granting   *   *   * a motion to suppress evidence, made before the trial of a person charged with a violation of any law of the United States, if the United States attorney certifies to the judge who granted such motion that the appeal is not taken for purpose of delay and that the evidence is a substantial proof of the charge pending against the defendant."

The certification filed by the Government in support of the instant appeal reads:

### "CERTIFICATE

"Pursuant to Title 18, United States Code, Section 3731, as amended by Title VIII of the Omnibus Crime Con-

---

**2.** The amendments to Section 3731 on January 2, 1971, by Public Law 91–644, Title III, 84 Stat. 1890, through a savings clause, § 14(b), provided that the 1971 amendments "shall not apply with respect to any criminal case begun in any district court before the effective date of this section [Jan. 2, 1971]."

trol and Safe Streets Act of 1968, I hereby certify that this appeal is not taken for the purpose of delay and that the suppressed materials constitute a substantial proof of the charge alleged against the defendant in the information.

> /s/ William J. Bauer
> William J. Bauer
> United States Attorney"

Defendant has failed to cite any authority to support his claim that the statutory certification required by Section 3731 necessitates the pleading of supporting evidentiary material. The form of the certification is not prescribed in the statute.

█ The rationale of both the majority and the dissenters in United States v. Mersky, 361 U.S. 431, 80 S.Ct. 459, 4 L.Ed.2d 423 (1960), would appear to indicate that the remedial purpose of the Criminal Appeals Act is to provide the United States with the right of appeal when it falls within the narrow limits of the instances specified in the Act; the Act itself to be strictly construed. Id. at 437, 80 S.Ct. 459.

█ Obviously one of the principal concerns of the Supreme Court in interpreting the Criminal Appeals Act has been to prevent violations of the Fifth Amendment's Double Jeopardy Clause. United States v. Jorn, 400 U.S. 470, 479–486, 91 S.Ct. 547, 27 L.Ed.2d 543 (1971). Cf. United States v. Sisson, 399 U.S. 267, 307, 90 S.Ct. 2117, 26 L.Ed.2d 608 (1970). The rule of strict construction is certainly intended to restrict the Government's appeal after a trial has begun. It would have no application in the case before us where there was only a pre-trial suppression hearing before a jury had been impanelled. Double jeopardy would not arise under these circumstances prior to the trial of the criminal charge. Jorn at 476, 91 S.Ct. 547, and Sisson at 302–303, 90 S.Ct. 2117.

Cases cited and relied upon generally by defendant, United States v. Sisson, supra and Will v. United States, 389 U. S. 90, 88 S.Ct. 269, 19 L.Ed.2d 305 (1967), concerned an appeal from a directed verdict of acquittal and the issuance of a writ of mandamus, respectively, hold that such appeals were not ones which come within the narrow limits authorized under the Act. They are readily distinguishable from the present appeal on that score.

We hold that the certification filed by the Government in support of this appeal sufficiently complies with Section 3731 and that we have jurisdiction to hear this appeal.

Accordingly, the order of the district court suppressing the interview of the defendant is reversed. The cause is remanded to the district court for further proceedings consistent with this opinion.

Reversed and remanded.